## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA

APPLE INC.,

                Plaintiff,

    - against -

THE UNITED STATES PATENT AND
TRADEMARK OFFICE; and KATHI VIDAL, in
her official capacity as DIRECTOR OF THE
UNITED STATES PATENT AND TRADEMARK
OFFICE,

                Defendants.

Civil Action No. _____

### PLAINTIFF APPLE INC.'S COMPLAINT

Plaintiff Apple Inc. ("Apple"), by and through the undersigned counsel, hereby alleges

the following against Defendants The United States Patent and Trademark Office; and Kathi

Vidal, in her official capacity as Director of The United States Patent and Trademark Office

pursuant to 15 U.S.C. § 1071(b)(1) (collectively ("Defendants")):

### NATURE OF THE ACTION

1.      This action arises out of the United States Patent and Trademark Office's

("USPTO") refusal to register Apple's SMART KEYBOARD mark for an "[a]ccessory for a

handheld mobile digital device, namely, a protective and decorative cover for a tablet computer

that functions as a computer stand and incorporates a keyboard" on the basis of genericness.

SMART KEYBOARD is not generic.  It is a descriptive term that has acquired secondary

meaning as a result of Apple's more than five years of substantially exclusive use.

2.      Apple uses its SMART KEYBOARD mark in connection with a tablet cover that

can function as a stand with the help of magnets, and also includes a built-in keyboard.  Apple

launched this product nearly seven years ago as part of Apple's SMART family of products for its iPad series of tablets.  This family of products includes SMART COVER (Reg. No. 4,155,659), SMART CASE (Reg. No. 3,741,031), SMART CONNECTOR (Reg. No. 5,179,231), and SMART FOLIO (Reg. No. 5,844,189), all of which the USPTO registered as trademarks on the Principal Register without a disclaimer of rights in the word SMART.

3.      Apple also owns dozens of registrations for SMART KEYBOARD in foreign countries and jurisdictions.  Apple's registrations for SMART KEYBOARD were issued in technologically sophisticated jurisdictions such as Japan, and include many other important markets such as the UAE, Mexico, Brazil, Argentina, Chile, Malaysia, Indonesia, and the Philippines, among other countries.

4.      Indeed, it is exceedingly rare for the combination of SMART and another word to be *generic*, i.e., the common name for a product.  In fact, the *USPTO's Trademark ID Manual* (in which the USPTO lists common names for goods and services that applicants can use to identify their goods and services in trademark applications) lists only six common names for technological products that contain the word "smart": smartphone, smart watch, smart glasses, smart cards, smart home hubs, and smart rings.  While the USPTO has singled out this handful of "smart"-prefix terms as generic, one cannot conclude that any phrase in which "smart" prefaces a noun is generic.  To the contrary, the USPTO has granted trademark registrations to *hundreds* of trademarks in the technology space (and International Class 9 specifically) that consist of SMART with another word.  Apart from Apple's own registrations as noted previously, these include:  SMART SCALE for "electronic scales for pediatric use" (Reg. No. 1,721,464); SMART HOLDER for mounting brackets and devices for computers, smartphones, tablets, and

other devices (Reg. No. 5,997,520), and; SMART CHARGER for "electrical battery chargers and parts thereof" (Reg. No. 1,753,682). **Appendix A** hereto lists dozens of other examples.

5.      Although the USPTO has found hundreds of marks containing SMART with another word *not* generic, it reached a different conclusion with Apple's SMART KEYBOARD mark, finding the mark generic for "technologically advanced keyboards."

6.      The USPTO's decision was wrong for multiple reasons. As an initial matter, uses of the term "smart keyboard" are sparse when not used to reference Apple's Smart Keyboard accessory. This strongly indicates that consumers do not understand or use "smart keyboard" as a generic "everyday" term. If it did, it would be used widely in the industry in marketing, in the categorization of goods in retail, and by product reviewers. The handful of third party uses on which the USPTO relied were devices not in current use, dissimilar, and / or had no exposure to general consumers.

7.      There is no dictionary definition of "smart keyboard" in either general or technical dictionaries, another sign of non-genericness. A consumer will find no "smart keyboard" product category related to tablet covers, stands, or keyboards. Competitors can (and do) use many terms other than "smart keyboard" to identify similar products. For example, both competitors and the press describe tablet covers or cases that incorporate keyboards using phrases such as "tablet keyboard cases," "Bluetooth keyboard stand," or "wireless keyboard case."

8.      This evidence shows that "smart keyboard" is not the common everyday name for any product category. Therefore, the SMART KEYBOARD mark is not generic. Instead, the SMART KEYBOARD mark is at least descriptive of Apple's Smart Keyboard accessory. Descriptive terms are those that describe functions, features, or purpose of goods. The SMART

3

KEYBOARD mark is a playful pairing of the action word "smart" with an inanimate object that highlights the three cleverly combined functions of Apple's product.  For this reason alone, the SMART KEYBOARD mark is registrable at the very least on the Supplemental Register, and the USPTO should be directed to register the mark.

9.     However, the SMART KEYBOARD mark is in fact entitled to registration on the Principal Register, having acquired distinctiveness in the market as a result of the advertising, sales, and press coverage for the Smart Keyboard accessory and Apple's lengthy use of the mark.

10.    Apple's marketing of the SMART KEYBOARD mark, particularly in connection with iPad and iPad Pro, has been key to the product's success.  Apple first announced the Smart Keyboard product on the main stage during Apple's 2015 "September Event" at the Bill Graham Civic Auditorium in San Francisco, California, which was attended in person by hundreds of members of the media and viewed online by countless consumers.  To illustrate the scope of exposure, a single YouTube video of the presentation was viewed more than five million times. This number does not include additional views of the presentation uploaded by other sources or shown on other platforms.  Apple also featured the Smart Keyboard accessory across every major form of media and promoted it as a key feature and addition to the first-generation iPad Pro.  Press coverage for SMART KEYBOARD has included both mainstream media outlets, such as *The New York Times* and *The Washington Post*, and nearly every major tech news outlet both online and in print.

11.    Apple's use of the SMART KEYBOARD mark has also been substantially exclusive since the release of the Smart Keyboard accessory nearly seven years ago.  Thus, Apple's substantially exclusive use now far exceeds the five-year period that courts typically consider to be a demonstration of acquired distinctiveness.

12.     Therefore, because the mark has acquired distinctiveness, it is registrable on the Principal Register, just as Apple's SMART COVER, SMART CASE, SMART CONNECTOR, and SMART FOLIO brands are so registered.

13.     Nonetheless, despite the overwhelming evidence that consumers do not use "smart keyboard" as a common everyday name but consumers do identify SMART KEYBOARD with Apple's iPad accessory, the USPTO refused registration of the mark SMART KEYBOARD in connection with "a protective and decorative cover for a tablet computer that functions as a computer stand and incorporates a keyboard" on either the Principal or Supplemental Register.  In so doing, the TTAB ignored the USPTO's own history of treating "smart" as either a suggestive term or a descriptive term, ignored the fact that the public uses terms other than "smart keyboard" as the common everyday name for Apple's product, and afforded undue weight to irrelevant evidence (such as foreign internet articles), while disregarding evidence that, in the United States, the phrase SMART KEYBOARD is used almost exclusively in connection with Apple's product.

14.     The SMART KEYBOARD trademark and product are important to Apple. Absent this appeal, third parties, including Apple's competitors, could take advantage of the significant goodwill and brand recognition that Apple has built in the SMART KEYBOARD mark over the past seven years.  This would leave consumers confused as to the source of iPad accessories and risk a significant degradation of Apple's brand if third parties are allowed to market and sell inferior tablet covers, stands, and keyboards under Apple's valuable brand name. Trademark law is meant to prevent precisely this type of confusion.

15.     Deciding that a phrase is generic is a decision with a profound impact on the trademark owner since it forecloses the possibility that trademark rights can *ever* develop.  This

is why the law makes clear that if there is any doubt about whether a term is generic, the USPTO must decide in the applicant's favor.

16.     Accordingly, in light of Apple's intent to present new evidence, Apple seeks (a) this Court's *de novo* consideration pursuant to 15 U.S.C. § 1071(b) of whether Apple's SMART KEYBOARD mark should be registered on either the Principal or Supplemental Register; (b) a declaratory judgment that Apple's SMART KEYBOARD trademark is valid and enforceable; and (c) an order requiring the Director of the USPTO to take actions consistent with the Court's decision, including to issue a certificate of registration for Apple's SMART KEYBOARD mark (Serial No. 86/857,587).

## PARTIES

17.     Plaintiff Apple is a California corporation with offices located at One Apple Park Way, Cupertino, California.

18.     Defendant The United States Patent and Trademark Office ("USPTO" or "Defendant") is a federal agency within the United States Department of Commerce.  The USPTO is located at 600 Dulany Street, Alexandria, Virginia 22314.

19.     Defendant Kathi Vidal ("Vidal" or "Defendant Vidal") is the Director of The United States Patent and Trademark Office and is included in this suit in her official capacity. As noted above, in the context of an *ex parte* appeal from a decision of the TTAB, the Federal Rules instruct that the Director be named in her personal capacity pursuant to 15 U.S.C. § 1071(b)(1).  Defendant Vidal has an address at P.O. Box 1450, Alexandria, Virginia 22313-1450.

## JURISDICTION AND VENUE

20.     This Court has subject-matter jurisdiction over this action pursuant to 15 U.S.C. § 1071(b), which provides that a party dissatisfied with a final decision of the TTAB may

6

institute a civil action in a Federal District Court challenging such decision.  This Court also has

subject matter jurisdiction pursuant to and 28 U.S.C. § 1331.

21.     This Court has personal jurisdiction over Defendants because they reside in the

Eastern District of Virginia for the purposes of venue under 28 U.S.C. § 1391(e).  *See* 15 U.S.C.

§ 1071(b)(4); 35 U.S.C. § 1(b); TBMP § 903.3.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(e)(1)(A).

## FACTUAL BACKGROUND

### A.     Apple's iPad devices and SMART Accessories

23.     Incorporated in 1977, Apple has long been one of the most prominent technology

companies in the world.  Apple designs, manufactures, and markets mobile communication and

media devices and personal computers, and sells a variety of related software, services,

accessories, networking solutions, and third-party digital content and applications.

24.     Apple's iPad tablet devices, the first of which was released on April 3, 2010, have

been the world's most popular tablet devices year over year since their launch, making Apple

synonymous with high-quality, innovative tablets and tablet accessories.

25.     One of the earliest and most popular accessories for the iPad tablet is Apple's

Smart Cover-branded protective cover for the iPad tablet, which also functions as a stand with

the use of magnets.  The Smart Cover accessory (pictured below) was first announced alongside

iPad 2 on March 2, 2011, and continues to be sold today, with over 300 million units sold since

its release.



26.     Apple owns an incontestable trademark registration for SMART COVER in

Class 9 for an "[a]ccessory for a handheld mobile digital electronic device that functions as a

protective and decorative cover and a stand," Reg. No. 4,155,659, which was registered on

June 5, 2012 on the Principal Register.  The registration disclaims the exclusive right to the word

COVER as descriptive, but not SMART.

27.     Following the success of the Smart Cover accessory, on June 11, 2012, Apple

announced another addition to its protective covers for the iPad, namely the Smart Case.  The

Smart Case accessory (pictured below) featured a very similar four-section cover and stand for

the iPad tablet, but also included a rear shell to protect the back of the iPad tablet.



28.     Apple also owns an incontestable trademark registration for SMART CASE in

Class 9 for "[p]rotective cases for use with electronic devices, namely, protective cases for use

with portable handheld communication devices," Reg. No. 3,741,031, which was registered on

January 19, 2010, on the Principal Register.  The registration disclaims the exclusive right to the

word CASE as descriptive, but not SMART.

29.     Along with the release of the new iPad Pro tablet on October 31, 2018, Apple also

announced a new version of its protective covers for the iPad, the Smart Folio.  The Smart Folio

accessory (pictured below) featured a three-segment magnetic cover for the front of the iPad Pro

tablet, similar to the Smart Cover, but also featured a magnetically attached rear cover for the

iPad Pro to protect the back of the iPad Pro device.



30.    Apple owns a trademark registration for SMART FOLIO in Class 9 for "[a]ccessory for a handheld mobile digital electronic device that functions as a protective and decorative case and a stand; cases adapted for computers; covers for tablet computers," Reg. No. 5,844,189, which was registered on August 27, 2019, on the Principal Register.  The registration disclaims the exclusive right to the word FOLIO as descriptive, but not SMART.

**B.    Apple's Smart Keyboard Accessory**

31.    Seven years ago, on September 9, 2015, Apple announced the first generation of iPad Pro tablet, pictured below, which was subsequently released on November 11, 2015.  The iPad Pro tablet allowed for the use of a groundbreaking Apple Pencil stylus, and also featured the addition of the Smart Connector interface, a series of three metal contact points allowing the iPad tablet to interface with accessories without additional wires or connection methods.





32.    Apple owns a trademark registration for SMART CONNECTOR in Class 9 for

"electrical and electronic connectors sold as an integral component of handheld mobile

computers and keyboards," Reg. No. 5,179,231, which was registered on April 11, 2017, on the

Principal Register.  The registration disclaims the exclusive right to the word CONNECTOR as

descriptive, but not SMART.

33.    Alongside the iPad Pro tablet, Apple also announced the Smart Keyboard

accessory on September 9, 2015, which also was released on November 11, 2015.  The Smart

Keyboard accessory, pictured below, consists of a tablet cover with a keyboard.  The Smart

Keyboard accessory also can be folded and held in place with magnets to create a stand for the iPad Pro tablet.



34.     The Smart Keyboard accessory has a small channel containing magnets that keeps the Smart Keyboard accessory attached to the iPad Pro tablet.  This channel also contains three magnetic, metal contacts (shown below) that allow the Smart Keyboard accessory to interface with the iPad Pro's Smart Connector and transmit a user's keystrokes to the iPad without the use of Bluetooth or Wi-Fi.  By using the Smart Connector interface, the Smart Keyboard accessory also foregoes the need for any separate battery or charging.



35.     From its release on November 11, 2015 through the present, Apple has advertised and sold the Smart Keyboard accessory using the SMART KEYBOARD mark.  Apple has used the SMART KEYBOARD mark extensively in the United States and around the world, particularly in connection with its iPad Pro tablets, including on many major television networks, online, and through other marketing and promotion channels.  Apple's efforts have been met with substantial success, resulting in the sale of millions of Smart Keyboard devices and positive reviews from Apple's customers about the functionality and convenience of the Smart Keyboard accessory, particularly as compared to similar keyboard cases.

36.     Following the announcement of the Smart Keyboard accessory at the 2015 September Event, Apple heavily advertised the accessory in various marketing channels.  For example, a WayBack Machine capture of the Apple website page for iPad at www.apple.com/ipad/ on September 9, 2015 (the day of the September Event) prominently features the new Smart Keyboard accessory, as shown below.



37.     Apple's video advertisements for iPad Pro similarly featured the Smart Keyboard accessory prominently, as shown in the screenshot below from the official trailer for iPad Pro.



38.     The announcement and release of the Smart Keyboard accessory received extensive press coverage, such as an article from the *New York Times* describing its advantages over other iPad keyboard accessories, and stories in *The Washington Post*, *Fortune*, *CNET*, and other publications.  This coverage referred to SMART KEYBOARD as the brand name of Apple's new accessory, not as a generic or descriptive term for Apple's product.  For instance:

- On November 23, 2015, *Fortune* noted that "the Smart Keyboard uses Apple's new Smart Connector tech to communicate with the iPad Pro" and "Apple's Smart Keyboard doubles as a protective case for the screen when not in use."

- On September 9, 2015, *CNET* stated as part of its September Event coverage that the "new Apple Pencil and attachable Smart Keyboard input devices were announced."

- On December 9, 2015, in an article entitled "Choosing an iPad Pro Keyboard," the *New York Times* described the utility of the fabric finish of the Smart Keyboard accessory, stating "The Smart Keyboard's typing surface is seamless, so debris and spilled liquids cannot get under the keys."

- Shortly after release, when reviews of the iPad Pro tablet and Smart Keyboard accessory were published, reviews such as that of Trusted Reviews on November 23, 2015, continued to refer to the Smart Keyboard accessory as a brand name, rather than a generic term, noting "The Smart Keyboard connects to the iPad Pro magnetically, rather than via Bluetooth."

39.     Apple continued to invest in the marketing of the Smart Keyboard accessory long after the 2015 September Event, displaying it frequently in later-generation iPad Pro marketing, such as in the 2018 iPad Pro "What's a Computer" series of commercials shown below.



40.     Apple's sale and marketing of the Smart Keyboard accessory has also resulted in nearly every top hit on a Google search for "smart keyboard" returning with a webpage selling or referring to Apple's Smart Keyboard accessory, touting Apple's Smart Keyboard accessory as a

top accessory for iPad tablets, or directing users to prominent news outlets' coverage of the release of Apple's Smart Keyboard accessory.

41.     Google Trends data also confirms the association between Apple and the trademark SMART KEYBOARD.  Google Trends provides information about the frequency of searches over time and the top search queries and topics related to a search term.  As the below excerpts show (1) there were barely any searches for the phrase "smart keyboard" prior to Apple's announcement of its product compared to after Apple's announcement, suggesting the phrase SMART KEYBOARD was not a generic term when Apple adopted it, and (2) nearly all of the related queries and topics for "smart keyboard" mention Apple or its iPad device, suggesting that consumers associate this phrase with Apple specifically.



### C.      SMART KEYBOARD Trademark Application History at the USPTO

42.      On December 22, 2015, Apple filed a use-based federal trademark application for the mark SMART KEYBOARD, Serial No. 86/857,587, in International Class 9 for "Accessory for a handheld mobile digital electronic device that functions as a protective and decorative cover, a keyboard, and a stand" (the "Application").  The Application included a first use date of November 11, 2015, based on the release date of the Smart Keyboard accessory.

43.      On April 4, 2016, a Trademark Examining Attorney issued an office action against the Application on two grounds: (1) a Section 2(e)(1) refusal finding that the mark SMART KEYBOARD was merely descriptive of a characteristic of the Smart Keyboard accessory, and (2) identification of goods, stating that the application should be amended to specify that the device was intended for use with a particular good (*e.g.* tablets or PDAs). Notably, the examiner did not raise "genericness" as a basis for refusing the registration.

44.      Apple responded to the April 4 office action on October 4, 2016.  Per the examiner's suggestion, Apple amended the description of goods in the Application to "Accessory for a handheld mobile digital device, namely, a protective and decorative cover for a tablet computer that functions as a computer stand and incorporates a keyboard."  In arguing against the descriptiveness refusal, Apple also entered evidence of its trademark registrations for SMART COVER, SMART CASE, and its use of the mark SMART CONNECTOR, as discussed above.  Apple also discussed the overwhelming success of its SMART family of products. Accordingly, Apple requested that the mark SMART KEYBOARD merited registration on the Principal Register as a distinctive mark.

45.      On November 17, 2016, the USPTO's examining attorney issued a second office action, again on the grounds that the SMART KEYBOARD mark is merely descriptive.  Once

17

again, the examining attorney did not raise genericness as a basis for refusing to register the mark.

46.     Pursuant to the USPTO's rules, on May 16, 2017, Apple appealed the examiner's decision to the TTAB and requested that the TTAB reconsider the examiner's refusal and find that SMART KEYBOARD had acquired distinctiveness under Section 2(f) of the Trademark Act.  The TTAB remanded the Application back to the examining attorney for further consideration of Apple's request for reconsideration.

47.     Shortly after the remand, the examining attorney issued another office action on June 28, 2017, this time refusing registration on the grounds of genericness for the very first time.

48.     Apple responded to this third office action on December 22, 2017, arguing that the examiner failed to meet the high burden to prove that a term is generic and that the examiner should withdraw the genericness refusal in order to properly evaluate Apple's previously-submitted evidence of acquired distinctiveness, including the following:

- Apple's SMART KEYBOARD accessory is sold through major national retailers including Best Buy, Target, and Staples and is ranked as a top-selling product in the case/cover/keyboard segment;

- Apple's SMART family of iPad accessories are all found together on retail websites including Amazon.com and Wal-Mart;

- The launch of the SMART KEYBOARD accessory was reported by nine of the ten largest American newspapers, was heavily promoted on the Apple.com website, and was also featured on television and YouTube commercials; and

- Apple's product is the only one named SMART KEYBOARD on the websites of top electronic retailers (including Best Buy, Target, and P.C. Richard & Son).  None used "smart keyboard" as a category of accessory keyboard, and all of the top Google results for the term refer to Apple's product.

49.     The examining attorney issued a Final Refusal of the Application on February 5, 2018 on the grounds that SMART KEYBOARD (or "close variations thereof") is generic.  The

examiner's final refusal also maintained the refusal in the alternative on the grounds of mere descriptiveness.

50.     Apple requested that the examiner reconsider the final refusal and asked that Apple be allowed to amend the Application to the Supplemental Register in light of the descriptiveness refusal, which was something the examiner had suggested Apple do previously. The examiner withdrew the Final Refusal, but, nonetheless, denied Apple's request and maintained the late-raised genericness refusal.

51.     Following an additional office action, and a request for reconsideration, the examiner's refusal became final.

**D.     Apple's Appeal to the TTAB**

52.     On March 9, 2020, Apple filed an appeal brief before the TTAB, requesting that the TTAB reverse the examiner's refusal of the Application on genericness grounds.

53.     Following oral arguments on November 19, 2020, Apple also requested that the TTAB remand the Application to the USPTO so that Apple could seek registration on the principal register pursuant to Section 2(f) of the Trademark Act in light of Apple's substantially exclusive use of SMART KEYBOARD for five years as of November 11, 2020.  Apple argued that the appeal should be suspended so that Apple could amend the Application back to the Principal Register so that evidence of the substantially exclusive use for five years could be considered.  Apple's argument met the statutory requirements of "good cause" for a request for remand, particularly as this evidence of five years of substantially exclusive use was not evidence Apple could have submitted until after the five years had run.

54.     The TTAB issued its decision on both Apple's request for remand and its appeal of the examiner's final refusal on January 12, 2021, which denied Apple's request for remand and affirmed the examiner's refusal to register SMART KEYBOARD.

55.     The TTAB's decision was notable because it showed the paucity of evidence supporting the final ruling as compared to the overwhelming evidence Apple presented.  This evidence (or lack thereof) included the following:

- The TTAB cited very few documents showing any use of "smart keyboard";

- Several of the documents and websites the TTAB cited originated from non-U.S. sources and were submitted by the examining attorney with little justification as to how such evidence reflects U.S. consumers' understanding of the mark, which is the proper question when registering a trademark in the United States;

- To the extent that the TTAB considered the third party use of SMART KEYBOARD identified by the examining attorney, there were so few of these uses that they in no way showed that consumers *primarily* understood SMART KEYBOARD as a common name for any category of goods, which is required for a mark to be generic;

- There were no dictionaries defining "smart keyboard" as anything other than an Apple product;

- Apple submitted evidence that searches on Google, top U.S. retailers, and nearly every prominent U.S. news publication showed that "smart keyboard" is nearly exclusively used to refer to Apple's product, which is a strong indicator that "smart keyboard" was not generic prior to Apple's release of the Smart Keyboard; and

- The record evidence showed that Apple's competitors and retailers used terms other than "smart keyboard" to refer to the genus of goods at issue, namely tablet cases and covers that function as both a stand and a keyboard, such as a "case/cover/keyboard," or a "keyboard case".

56.     In light of the many flaws in the TTAB's decision, on February 11, 2021, Apple requested that the TTAB reconsider its final decision.  *First*, Apple showed that its request for remand fell well within the statutory requirements and prior grants for remand found in TTAB case law, and Apple would be prejudiced without such a remand because its five years of substantially exclusive use presented a new issue for the examining attorney.  Apple further noted that its decision to amend to the Supplemental Register in the first place was at the suggestion of the examining attorney and took advantage of Apple's international registration for

SMART KEYBOARD.  *Second*, Apple argued again that the evidence presented by the examining attorney fell far short for the burden required to show genericness.

57.     On August 29, 2022, the TTAB issued its final decision on Apple's request for reconsideration, affirming both its decision to refuse Apple's request for remand, as well as its decision to affirm the examiner's refusal to register SMART KEYBOARD.

**COUNT I**
**ADJUDICATION OF ENTITLEMENT TO REGISTRATION**
**(15 U.S.C. § 1071(B)(1) AND 37 CFR § 2.145(C))**

58.     Apple hereby re-alleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 57 of this Complaint as if fully set forth herein.

59.     The primary significance of the SMART KEYBOARD mark as used in connection with Apple's applied-for goods and services is not as a common name or generic term for that class of goods and services.  Rather, the primary significance of the phrase SMART KEYBOARD is as a trademark for Apple's product.

60.     Evidence that the SMART KEYBOARD mark is not generic includes, but is not limited to:  (a) the lack of any dictionary definition for SMART KEYBOARD; (b) the paucity of Google searches for this phrase prior to Apple's launch of its Smart Keyboard accessory as compared to after Apple's launch; (c) the use of terms other than "smart keyboard" (e.g., "tablet keyboard case," "keyboard case," "Bluetooth keyboard stand," and "case with keyboard") by the press and Apple's competitors to refer to products similar to Apple's product; (d) the scarcity of instances in which prominent U.S. news sources have used the phrase "smart keyboard" generically; and (e) the USPTO's registration of hundreds of other trademarks consisting of SMART + another word, which establishes that SMART-formative marks are not intrinsically generic.

61.     Accordingly, Apple's SMART KEYBOARD mark is instead at least descriptive of the Smart Keyboard accessory.

62.     Apple's SMART keyboard trademark has also acquired distinctiveness among consumers.  Evidence of such acquired distinctiveness includes:  (a) Apple's substantial advertising for the Smart Keyboard accessory; (b) Apple's significant sales of the Smart Keyboard accessories; (c) substantial press coverage for the Smart Keyboard accessory; (d) Google Trends data indicating that consumers associate the trademark SMART KEYBOARD with Apple and its products; and (e) Apple's more than five years of substantially exclusive use of this term.

63.     Apple anticipates introducing new evidence, including expert evidence, not presented to the TTAB on all issues in this case.  Accordingly, this Court should consider all issues related to the registrability of Apple's trademark *de novo*.

64.     Because the SMART KEYBOARD mark is at least descriptive, not generic, and has acquired distinctiveness pursuant to Section 2(f) of the Lanham Act, 15 U.S.C. § 1052(f), the Director should be required to pass Apple's application for SMART KEYBOARD onto publication for registration on the Principal Register.

65.     Alternatively, the Director should be required to pass Apple's application for SMART KEYBOARD onto publication for registration on the Supplemental Register.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Apple Inc. respectfully requests that the Court enter an Order:

1.     Reversing and vacating the TTAB decision in *In re Application of Apple Inc.*, Application No. 86/857,587;

2.     Declaring that Apple's SMART KEYBOARD mark is not generic;

3.     Declaring that Apple's SMART KEYBOARD mark is descriptive;

22

4.     Declaring that Apple's SMART KEYBOARD mark has acquired distinctiveness in connection with Apple's goods;

5.     Requiring the Director of the USPTO to pass Apple's SMART KEYBOARD mark (Serial No. 86/857,587) onto publication for registration on the Principal Register or, in the alternative, on the Supplemental Register; and

6.     Awarding to Apple such other and further relief as the Court deems just and equitable.

## NOTICE OF NEW EVIDENCE AND REQUEST FOR *DE NOVO* REVIEW

As mentioned above, Apple intends to (a) introduce new evidence in this case, beyond that which was considered by the USPTO; and (b) develop and pursue such new evidence to the full extent permitted by the Federal Rules of Civil Procedure and Federal Rules of Evidence. Apple thus requests that this Court undertake *de novo* review of all evidence in this case.

\*         \*         \*

Dated:  October 28, 2022

*/s/ Robert E. Scully, Jr.*

Robert E. Scully, Jr. (VSB No. 19218)
BLANKINGSHIP & KEITH, PC
4020 University Drive, Suite 300
Fairfax, VA 22030
Telephone: (703) 691-1235
Facsimile: (703) 691-3913
rscully@bklawva.com

Dale M. Cendali (*pro hac vice* pending)
Mary Mazzello (*pro hac vice* pending)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800

Facsimile: (212) 446-4900
dale.cendali@kirkland.com
mary.mazzello@kirkland.com

Johannes Doerge (*pro hac vice* pending)
1301 Pennsylvania Avenue N.W.
Washington, DC 20004
Telephone: (202) 389-3364
Facsimile: (212) 446-4900
nathan.mammen@kirkland.com
johannes.doerge@kirkland.com

*Attorneys for Plaintiff Apple Inc.*